UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFERY JOHN LOVEJOY,

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

6:18-CV-6482
DECISION & ORDER

On June 29, 2018, the plaintiff, Jeffery John Lovejoy, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On December 28, 2018, Lovejoy moved for judgment on the pleadings, Docket Item 7; on February 26, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on March 19, 2019, Lovejoy replied, Docket Item 12.

For the reasons stated below, this Court grants Lovejoy's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On February 5, 2015, Lovejoy applied for Disability Insurance Benefits. Docket Item 6 at 80. He claimed that he had been disabled since April 30, 2007, due to a "[b]roken right foot," "[i]njuries due to a fall," and "[i]njuries [to his] left shoulder." *Id.*

On May 11, 2015, Lovejoy received notice that his application was denied because he was not disabled under the Act. *Id.* at 79. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 86, which was held on February 15, 2017, *id.* at 28. The ALJ then issued a decision on May 2, 2017, confirming the finding that Lovejoy was not disabled. *Id.* at 14-23. Lovejoy appealed the ALJ's decision, but his appeal was denied, and the decision then became final. *Id.* at 4.

## II. THE ALJ'S DECISION

In denying Lovejoy's application, the ALJ evaluated Lovejoy's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

2

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ found at step one that Lovejoy had not engaged in substantial gainful activity since the alleged onset date. Docket Item 6 at 16. At step two, the ALJ found that Lovejoy had "the following severe impairments: dysfunction of a major joint (ankle), status post fracture; shoulder dysfunction including bursitis and status post rotator cuff repair; and obesity." *Id.*

At step three, the ALJ determined that Lovejoy did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the

3

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 17. More specifically, the ALJ found that Lovejoy's impairments did not meet Listing 1.02 (major dysfunction of a joint).

The ALJ then found that Lovejoy had the following RFC:

> [Lovejoy can] perform sedentary work[1] . . . except with the following additional limitations: [Lovejoy] occasionally can climb ramps and stairs. He occasionally can climb ladders, ropes, or scaffolds. [He] can perform frequent reaching with the non-dominant, left, upper extremity.

*Id.* (footnote added). The ALJ explained that although "[Lovejoy]'s medically determinable impairments could reasonably be expected to cause [his] alleged symptoms[,] . . . [Lovejoy]'s statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 18 .

In reaching this determination, the ALJ observed that there were "no corresponding [medical] opinions in the record" addressing Lovejoy's "alleged physical impairments." *Id.* at 20. The ALJ noted that a physician who had treated Lovejoy in 2002, Steven Bruce, M.D., submitted two letters on Lovejoy's behalf. *Id.* But the ALJ gave these letters "no weight" because, among other things, "Dr. Bruce's treating relationship with [Lovejoy] pre-date[d] the amended disability onset period by more than five years." *Id.*

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

At step four, the ALJ found that Lovejoy was unable to perform his past relevant work as a "ship header." *Id.* But at step five, the ALJ found that "[c]onsidering [Lovejoy's] age, education, work experience, and [RFC], [Lovejoy] had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* at 21. Specifically, the ALJ credited the testimony of a vocational expert ("VE") that Lovejoy could find work as a "ship pilot dispatcher," a "ship secretary," or a "ship repair officer." *Id.* at 21-22.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

5

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.     ALLEGATIONS**

Lovejoy argues that the ALJ's RFC determination was not supported by substantial evidence because—in the absence of a medical opinion—the ALJ improperly relied on his own lay judgment to interpret the medical records. Docket Item 7-1 at 9. He also contends that the ALJ erred in relying on the VE's opinion that Lovejoy had acquired "transferrable skills" from his prior work as a ship header. *Id.* at 6. This Court agrees that the ALJ erred prejudicially with respect to the former argument and therefore remands this matter to the Commissioner to acquire and consider a medical opinion regarding Lovejoy's functional capacity.

**II.    ANALYSIS**

"Although the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (quoting *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)). Thus, "where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations . . . , the ALJ [generally] must recontact [a treating physician], order a consultative examination, or have a medical expert testify at the hearing." *Skupien v. Colvin*, 2014 WL 3533425, at *6 (W.D.N.Y. July 16, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 913 (N.D. Oh. 2008)); *see*

6

*also Thomas*, 2019 WL 2295400, at *2 (explaining that "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence" (quoting *House*, 2013 WL 422058, at *4)).

Here, the ALJ concluded that Lovejoy could perform sedentary work and could "occasionally . . . climb ramps and stairs[,] . . . ladders, ropes, [and] scaffolds." Docket Item 6 at 17. The ALJ explained that this RFC determination was

> supported by a remote injury corrected by surgical intervention, mild objective imaging during the relevant disability period, [Lovejoy]'s good response to conservative treatment, [Lovejoy]'s scant medical evidence punctuated by prolonged treatment gaps, and [Lovejoy]'s wide range of activities of daily living—chronicled through treatment notes and [Lovejoy]'s self-reports.

*Id.* But the ALJ acknowledged that there were no medical opinions on which he relied in determining Lovejoy's RFC. *Id.* at 20.[2] And in the absence of a medical opinion, the ALJ necessarily relied only on his own lay judgment to formulate Lovejoy's RFC. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that plaintiff was capable of light work with restrictions and is left without a clear

---

[2] As noted above, the ALJ gave no weight to letters submitted by Dr. Bruce, a physician who treated Lovejoy prior to the disability onset period. An ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are most able to "provide a detailed, longitudinal picture of [the claimant's] medical impairments." 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 Fed. App'x 105, 108. Here, however, Lovejoy does not argue—nor does it appear to the Court—that Dr. Bruce should be considered a treating physician given that there is no evidence of an "ongoing treatment relationship" during the disability period.

7

indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data.").

For example, it is not at all clear how the ALJ was able to determine from the bare medical data that despite the "severe . . . dysfunction of" Lovejoy's ankle, Docket Item 6 at 16, Lovejoy would be able to perform "sedentary work," which "generally involves *up to two hours of standing or walking* and six hours of sitting in an eight-hour work day," *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (emphasis added) (citing SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)). It is likewise unclear how the ALJ determined that Lovejoy could occasionally climb ramps, stairs, ladders, ropes, and scaffolds notwithstanding his severe ankle impairment. Docket Item 6 at 17; *see also Thomas*, 2019 WL 2295400, at *2 (remanding where "[a]ll of the records in the case consist of clinical notes that have no medical source statements and no other assessments of plaintiff's exertional and non-exertional abilities," yet "the Commissioner crafted a very specific RFC that included references to ladders, ropes, and scaffolds"). What is more, Lovejoy testified that he "could no longer climb a ladder" and had to move to a first-floor apartment because "the movement of [his] foot is restricted," Docket Item 6 at 48-49, but the ALJ gave no reason for discrediting that testimony.

The ALJ relied heavily on the treatment notes of Lovejoy's primary-care physician during the disability period—Laura Fox, D.O.—which made "[a]lmost no mention . . . of [Lovejoy]'s shoulder or foot pain." *Id.* at 20. But Lovejoy testified at the hearing that both Dr. Fox and Lovejoy's current physician, Brenda Davis, M.D., had "stayed clear . . . [of] any mention of the foot or even care of the foot because . . . those doctors consider that a workers comp[ensation] matter and they refuse to be involved."

8

*Id.* at 52. The ALJ did not mention that contention, explain his reasoning for rejecting it, or contact the physicians to see whether it was true. And that is particularly troubling given that Dr. Davis's notes appear to corroborate Lovejoy's testimony. *See id.* at 480 ("MD advised [patient] that given work related injury of foot/ankle, he should [follow up] with ortho[pedic], WKC[3] doctor[,] however, [patient] kept focusing visit on this issue. [A]dvised [patient] to get labs done and [follow up] but that *foot/ankle issues, or other work related issues cannot be treated in this office.*" (emphasis added)).

Moreover, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'" *Rosa*, 168 F.3d at 79 (quoting *Perez*, 77 F.3d at 47)). Here, there were indeed such deficiencies, and the ALJ therefore was obligated to develop the record regarding Lovejoy's functional capacity during the period of disability. *See Sobolewski v. Apfel,* 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history."). For example, the ALJ could have contacted Lovejoy's treating physicians, solicited a consultative examination, or both.

The ALJ also relied on Lovejoy's gaps in seeking treatment as support for the RFC determination. But the ALJ "d[id] not rule out the possibility that [Lovejoy] was not able to afford treatments that might have been helpful." *Thomas*, 2019 WL 2295400, at *3 (citing SSR 16-3p, 2016 WL 1020935, at *14170 (March 16, 2016)). "It would fly in

---

[3] The Court is not certain to what "WKC" refers, but it appears to relate to—and may mean—workers compensation.

9

the face of the plain purposes of the Social Security Act to deny [the] claimant benefits because he is too poor to obtain additional treatment . . . ." *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000).

Finally, the ALJ cited Lovejoy's "wide range of activities of daily living—chronicled through treatment notes and [Lovejoy]'s self-reports" as supporting the RFC determination. Docket Item 6 at 17. But it is not clear to what "wide range of activities of daily living" the ALJ was referring. On the contrary, Lovejoy testified that he had to sell his house and move to a first-floor apartment because he no longer could maintain the house due to his foot and shoulder injuries. *Id.* at 48. The ALJ never explained why he did not credit that testimony.

"[T]he absence of a properly grounded RFC constitutes legal error that requires remand regardless of any underlying raw data." *Thomas*, 2019 WL 2295400, at *2. Here, the ALJ's failure to obtain a medical opinion regarding Lovejoy's functional capacity constituted just such an error. *See Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018)) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review."). This Court therefore remands this case so that the ALJ may solicit a medical opinion regarding Lovejoy's functional capacity, probe whether Lovejoy's gaps in treatment were a result of financial hardship, and otherwise address the deficiencies noted above.[4]

---

 4 Lovejoy also argues that the ALJ erred in relying on the VE's testimony that Lovejoy had acquired "transferrable skills." Docket Item 7-1 at 6. Because the ALJ will

## **CONCLUSION**

For the reasons stated above, Lovejoy's motion for judgment on the pleadings, Docket Item 7, is GRANTED IN PART and DENIED IN PART, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 11, is DENIED. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   January 15, 2020
         Buffalo, New York

                                    *s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE

---

revisit that issue on remand, there is no need for this Court to reach it here. *See Kuhaneck v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 241, 248 (W.D.N.Y. 2019).